**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| E.R.H.A.,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH B. EDLOW, DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; AND UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES.<br><br>Defendants. | Case No. 1:26-cv-12347 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

On May 22, 2026, Plaintiff E.R.H.A. filed a Complaint in this Court asserting that Defendants denied Plaintiff's I-360 Special Immigrant Juvenile (SIJS) petition in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2), and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(27)(J), as amended by the Immigration Act of 1990, Pub. L. No. 101–649, § 153, 104 Stat. 4978 (1990); 8 U.S.C. § 1101(a)(27)(J) and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) Pub. L. No. 110-457, § 235(d), 112 Stat. 5044 (2008); 8 U.S.C. 1232(d)(6). On August 21, 2026, Defendants filed a Motion to Dismiss seeking to dismiss Plaintiff's claims for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6). Plaintiff, through undersigned counsel, hereby opposes Defendants' Motion to Dismiss the Complaint in the above-captioned matter. Plaintiff's

arguments in opposition to Defendants' Motion to Dismiss are fully set forth in the attached memorandum of law.

Respectfully submitted,

By: /s/ Jacklyn Gurany
Jacklyn Gurany (BBO# 679606)
Children's Law Center of MA
2 State Street P.O. Box 710
Lynn, MA 01903
781-309-5486
J.Gurany@clcm.org

/s/ Julianna Rivera Maul
Julianna Rivera Maul (CA SBN 290955)
The Law Office of Julianna Rivera, P.C.
1101 Fifth Ave, Suite 360
San Rafael, CA 94901
510-473-2141
Julianna@juliannariveralaw.com

*Attorneys for the Plaintiff*

**CERTIFICATE OF SERVICE**

I, Jacklyn Gurany, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 3, 2026

By: /s/ Jacklyn Gurany
Jacklyn Gurany (SBN 679606)
Children's Law Center of MA
2 State Street P.O. Box 710
Lynn, MA 01903
781-309-5486
J.Gurany@clcm.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| E.R.H.A.,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH B. EDLOW, DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; AND UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES.<br><br>Defendants. | Case No. 1:26-cv-12347 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Plaintiff E.R.H.A. seeks classification from Defendants as a Special Immigrant Juvenile (SIJS) based on neglect he suffered from his parents in Guatemala. A grant of SIJS would provide E.R.H.A. with protection from removal and a path to lawful permanent residence. Notwithstanding his eligibility for SIJS, Defendant USCIS denied Plaintiff's SIJS petition solely on the basis of timeliness: USCIS found that E.R.H.A. was not under twenty-one years old at the time his petition was filed. In a detailed Complaint, Plaintiff challenges this erroneous decision as violating the Administrative Procedure Act and the Immigration and Nationality Act for multiple reasons, including that Defendants misinterpret their own regulation, that E.R.H.A. was, in fact, under twenty-one at the time USCIS received the petition, that Defendants' limitations on

the methods by which a person may file such a petition are arbitrary and capricious and that the filing deadline should be equitably tolled. *See* Dkt. 1, ¶¶ 21-27. Defendants seek to dismiss Plaintiff's claims on the basis that Plaintiff failed to plead sufficient facts to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. (12)(b)(6). None of the grounds raised by Defendants warrant dismissal and their motion should be denied.

**<u>RELEVANT SIJS STATUTES AND REGULATIONS</u>**

The term "special immigrant" means…(J) an immigrant who is present in the United States-

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency of department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, or abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that-
>
> > (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and
> >
> > (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter.

8 U.S.C. § 1101(a)(27).

The statute further provides that an SIJS petitioner "may not be denied special immigrant status... based on age if the alien was a child on the date on which the alien applied for such

status." The INA generally defines a "child" as "an unmarried person under twenty-one years of age." *Id.* § 1101(b)(1).

Per the regulations, an SIJS petitioner "is eligible for classification as a special immigrant juvenile, if, inter alia, he or she is under twenty-one years of age at the time of filing the petition. 8 C.F.R. § 204.11(b).

The Congressional intent of the SIJS statute from the outset has been to create a pathway to lawful permanent status for vulnerable immigrant youth who have suffered abuse, abandonment, or neglect by a parent. Congress created SIJS through the Immigration Act of 1990 with the express intent to assist a limited group of vulnerable children "to remain safely in the [United States] with a means to apply for [lawful permanent] status. *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011). SIJS alleviated some of the hardships identified by Congress experienced by such youth who were dependents of United States juvenile courts by providing them with the opportunity to apply for legal permanent resident status, with the ability to apply for U.S. citizenship in the future. In this way, from its inception, SIJS has functioned as a pathway to permanent legal status and the safety and stability that attach to such status.

Congress amended the SIJS statue in 2008 with passage of the Trafficking Victims Protection Reauthorization Act (TVPRA), Pub. L. No. 110- 457 § 235(d), 122 Stat. 5044 (2008), which required a state court to make a determination that an SIJS applicant could not be "reunified with 1 or both of [his or her] parents…due to abuse, neglect, abandonment, or a similar basis found under state law." *Id.* § 235(d)(1)(A). The TVPRA also added a provision which provided that an applicant for SIJ status "may not be denied special immigrant status…based on age if the alien was a child on the date on which the alien applied for such status. *Id.* § 235(d)(6). These amendments make clear that Congress intended for youth to

remain eligible for SIJ classification *after* turning twenty-one so long as they applied for SIJS before turning twenty-one. *See also* USCIS Policy Manual, vol. 6, part J, ch. 2(C) & n.3 (referring to this provision as “age-out protection”).

## **FACTUAL AND PROCEDURAL OVERVIEW**

Plaintiff was born on December 9, 2000 at about 18 hours and 42 minutes, which is 6:42 p.m., Central Standard Time. On December 8, 2021, E.R.H.A obtained a Massachusetts state juvenile court order finding that reunification with his parents was not viable due to neglect and that it was not in his best interest to return him to Guatemala. Upon the state juvenile court making these determinations, E.R.H.A. mailed his SIJS petition to Defendant U.S. Citizenship and Immigration Services (USCIS) via FedEx same-day delivery. FedEx attempted delivery to the USCIS Chicago lockbox on December 8, 2021; however, USCIS declined delivery, and FedEx ultimately returned a second time to deliver the petition the following day, on December 9, 2021, at 10:54 AM. On September 8, 2022, USCIS denied Plaintiff’s SIJS petition on the basis that since Plaintiff’s SIJS petition was received by USCIS on December 9, 2021, Plaintiff was not under the age of twenty-one at the time of filing. In a decision dated March 6, 2025, the USCIS Administrative Appeals (AAO) office issued an opinion dismissing Plaintiff’s appeal of the denial of his SIJS petition for the same reason. Neither the SIJS petition denial nor the AAO decision contained any mention of the reason why Plaintiff’s petition was not accepted by the lockbox on December 8, 2021.

## **STANDARD OF REVIEW**

To meet the standard required to overcome a motion to dismiss for failure to state a claim, a successful complaint must only plead “factual allegations, either direct or inferential,

respecting each material element necessary to sustain recovery under some actionable legal theory." *N.R. v. Raytheon Co*., 24 F.4th 740 (1st Cir. 2022), citing *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). Additionally, in reviewing a motion to dismiss, the court must "draw all reasonable inferences…in the pleader's favor." Id. at 755, citing *Grajales v. P.R. Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012) ("In order to survive a motion to dismiss for failure to state a claim, the complaint must contact sufficient factual matter to state a claim to relief that is plausible on its face.")

## ARGUMENT

### I. This Court Should Deny Defendants' Motion to Dismiss Because Plaintiff Has Plead Sufficient Facts to State a Claim for Which Relief Can Be Granted

In their Motion to Dismiss, Defendants assert that Plaintiff failed to plead facts supporting the conclusion that USCIS acted arbitrarily, capriciously, or contrary to law. To the contrary, Defendants have applied regulations to him in an arbitrary and capricious manner and in violation of the plain language and Congressional intent of the SIJS statute for the reasons set forth below.

Plaintiff adequately alleges that Defendants' actions with respect to his SIJ petition were not aligned with the congressional intent of the SIJS statute. When taken together, these allegations support the conclusion that USCIS acted arbitrarily, capriciously, and contrary to law in denying his SIJS petition

#### A. Contrary to Defendants' Interpretation, the Relevant Regulation Does not Require that an SIJS Petition be Filed on the Day Prior to the Petitioner's Birthday.

Per the plain language of the regulation, a Petitioner must be "under 21" when he or she files the SIJS petition. An individual remains under twenty-one years of age up until the time of his or her birth on his or her birthday. Defendants' interpretation is arbitrary and capricious in that it imposes a cut-off time for "under 21" that can be as much as twenty-three hours and fifty-nine minutes prior to the time the applicant actually turns twenty-one years old. Here, because Plaintiff was born at 6:42 PM on December 9, 2000, Defendants' interpretation would cut off his eligibility to file approximately eighteen hours before he actually turned twenty-one.

Under the APA, Courts must hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D). An agency rule or action will be deemed arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). Here, Defendants' interpretation which imposes a deadline for filing that is not consistent with the meaning of the statute is arbitrary and capricious.

Because the language of the regulation is plain, no deference is owed to Defendants' interpretation. Even if the language were ambiguous, "[a]gencies have no special competence in resolving statutory ambiguities…[c]ourts do." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 at 400-01. Rather than defer to agency interpretations, courts must "exercise their independent judgment" and apply the "best reading" of a statute. *Id*. at 412–13. *See also R.I. Latino Arts v.*

*Nat'l Endowment for the Arts*, No. CV 25-79 WES, 2025 WL 1009026, at *9 (D.R.I. Apr. 3, 2025).

Following the Supreme Court's ruling in *Loper Bright*, the only qualification is that a court, in making its own independent judgment, may give appropriate weight to the way an agency's "experience and informed judgment" influenced the agency's reading of the statute. *Id.* at 394, citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). However, the Supreme Court has emphasized that *Skidmore* does not direct courts to give weight to an agency interpretation except to the extent that an agency's interpretation is actually persuasive. *Gonzales v. Oregon*, 546 U.S. 243 (2006). Moreover, "in the immigration context, there is a long-standing presumption to construe "any lingering ambiguities" in favor of the petitioner." *Duarte Ceri v. Holder*, 630 F.3d 83, 89 (2nd Cir. 2010), citing *INS v. Cardoza Fonseca,* 480 U.S. 421 (1987). Where, as here, the agency's interpretation of a regulation is inconsistent with its plain meaning, the interpretation must be found to be arbitrary and capricious.

**B. <u>Defendants Impose Arbitrary and Capricious Eligibility Requirements for SIJS That Contravene Federal Law</u>**

SIJS is a unique form of immigration relief with a firm and inflexible deadline. The strict age-out limitation for SIJS eligibility is in stark contrast to other USCIS applications which do not have a filing deadline, or applications which do impose a deadline but also provide for exceptions, extensions, or equitable tolling of the deadline for exceptional circumstances, humanitarian reasons, or where it is demonstrated that the delay is reasonable and was beyond the control of the applicant. Such is the case with, among other application deadlines, the one-year filing deadline for an asylum application, the two-year deadline for filing an I-730 Refugee/Asylee Relative petition, and the 30-day deadline for filing a motion to reconsider. *See*

*e.g.* 8 C.F.R. § 208.21(c), 8 C.F.R. § 103.5(a)(1)(i). The consequences of failing to meet the filing deadline are especially high for SIJS applicants where failure can mean detention and deportation to a country a state court has already found it would not be in their best interest to be returned to rather than legal permanent residence and eventual U.S. citizenship.

Despite Congress's clear intention to provide legal status to vulnerable immigrant youth through SIJS, and an "age-out" protection through the TVPRA, USCIS has coupled its interpretation of the regulation as imposing a filing deadline of a day prior to an applicant's twenty-first birthday with numerous additional hurdles to obtaining SIJ status that are arbitrary and capricious and in excess of its statutory authority. These hurdles, outlined in the complaint, *see* Dkt. 1 ¶¶ 20, 26-27, 29-30, were addressed by the court in *Inga Chacon v. Garland et al.,* No. 2:22-cv-01926 (E.D.N.Y. 2022). In that case, the court considered USCIS's requirement that petitions be mailed to one of a limited number of 'lockboxes;' its disallowance of hand delivery or electronic filing of the petition; failure to consider an applicant's time of birth in the instances when an SIJS petition arrives on the applicant's twenty-first birthday; failure to apply a 'mailbox rule' and instead maintaining that the date of receipt by the lockbox controls whether an application is timely; and failure to allow for equitable tolling when delays in filing are due to events outside the control of the applicant. As discussed in the Complaint, in 2023 USCIS implemented a means of submitting an SIJS petition at a USCIS field office in limited circumstances, but this means was not available to Plaintiff at the time he sought to file his SIJS petition.

In evaluating the totality of these practices by USCIS, the court in *Inga Chacon* found that the conclusion that "the agency had acted arbitrarily and capriciously- and in certain cases unlawfully-…was virtually inescapable." *Id.* Document 19 at 2. In *Inga Chacon*, as in this

matter, Defendants relied on their interpretation of 8 C.F.R. § 103.2(a)(7) and 8 U.S.C. § 204.1(b) to conclude that the petitioner was ineligible for SIJS based on the fact that their SIJS petition was received on the date of their twenty-first birthday. However, USCIS's problematic reading of these regulations is only one component in the constellation of roadblocks the agency has enacted that serve to cut off access to a vital form of immigration relief that Congress intended would protect immigrant youth from removal.

As to USCIS's failure to consider an applicant's time of birth in evaluating their eligibility for SIJS, the court in *Inga Chacon* held that at least one United States Court of Appeals has definitively resolved this issue in favor of requiring an inquiry into an applicant's time of birth:

> U.S.C. 1101(b)(1) and 8 C.F.R. § 204.11(b)(1)…require that a SIJ applicant be "under 21 years of age at the time of filing the petition" – not that the application be filed before their 21st birthday.

*Id. at 11, citing Duarte Ceri v. Holder,* 630 F.3d 83 (2nd Cir. 2010). The court in *Duarte Ceri* had previously interpreted the phrase "under the age of eighteen years" in a statute governing derivative citizenship and found that USCIS had acted unlawfully when it ignored Supreme Court precedent in failing to recognize that "[t]he legal fiction that a day is indivisible is a rule of convenience that is satisfactory only as long as it does not operate to destroy an important right" and that "whenever it becomes important to the ends of justice, the law will look into fractions of a day, as readily as into the fractions of any other unit of time." *Duarte Ceri v. Holder*, 630 F.3d at 88, citing *Town of Louisville v. Portsmouth Sav. Bank*, 104 U.S. 469 (1881), *Taylor v. Brown*, 147 U.S. 640, 645-46 (1893) ("[A]s to the general doctrine that the law does not allow of fractions of a day, it is settled that, when substantial justice requires it, courts may ascertain the

precise time when…an act [is] done”). *See also Coniglio v. Garland*, 556 F. Supp. 3d 187 (E.D.N.Y. 2021) (finding USCIS’s interpretation of the phrase “had not reached the age of 18 years” in § 1101(b)(1)(B) was contrary to law because it failed to apply *Duarte-Ceri*). The court in *Inga Chacon* held that because the relevant statutory language contained in the SIJS statute “is materially indistinguishable” from that in the derivative citizenship statute, “*Duarte-Ceri v. Holder* plainly applies with equal force to SIJ petitions.” *Inga Chacon* at 11. In asserting otherwise, the court found that USCIS was “systematically disregarding the law and common sense.” *Id.* at 13-14.

Defendants’ actions in imposing a requirement that SIJS petitions must be filed by mail only to a lockbox facility, and in failing to allow for electronic filing or filing by other means are inconsistent with the SIJS statute’s text, scope, and purpose. As the court observed in *Inga Chacon*, “[t]he lockbox system eliminates the possibility of local or personal delivery as USCIS requires delivery by USPS or overnight courier” even though “USCIS’s regulations expressly contemplate filings electronically or in paper format,” and USCIS allows for the electronic filing of at least ten different types of petitions. *Id.* at 15-16. Given this, “the insistence upon mailing of documents remains unjustifiable,” especially considering that “the agency inexplicably disallows personal service” of SIJS petitions, and raises the question of whether USCIS’s actions “represent an arbitrary and capricious exercise of its authority”. *Id*. at 16, citing *Cabrera Cabrera v. USCIS*, 374 F. Supp. 3d 153, 162 (D.D.C. 2019) (plaintiff raised plausible claim based on USCIS’s failure to provide electronic service for SIJS petitions).

The court in *Inga Chacon* further noted that in some instances USCIS defines receipt as acceptance by USPS as to certain other applications but does not extend such a ‘mailbox rule’ to SIJS petitions. *See e.g.* 8 C.F.R. § 245.10(a)(2)(i) (a qualifying immigrant visa petition timely if

"postmarked on or before April 30, 2001"), and that under 8 C.F.R. § 103.8(b), USCIS deems its own service to be complete upon mailing, building in a three-day window for delivery. Thus, "while USCIS accounts for mailing delays when it chooses to use the mails to provide notice, no reciprocity exists for applicants required to use the mails." *Id.* at 16-17.

In *Rodas Jara v. Noem*, No. 8:25-cv-02744, 12 (D. Md. Aug 4, 2026), another court found that USCIS's "narrow and restrictive" interpretation of § 1101(a)(27)(J)(i) "is generally incongruous with Congress's efforts to expand eligibility for SIJ status and increase protections for vulnerable immigrant children" and that USCIS actions were "not in accordance with law" when it "denies relief to certain individuals who meet all of the statutory requirements" for SIJ status. *Id.* at 13-14, citing *Perez v. Cuccinelli*, 949 F.3d 865, 878 (4th Cir. 2020) (en banc). The court also held that

> "[i]t is also arbitrary and capricious in that, in some instances, [USCIS] leaves to chance whether petitioners are eligible for SIJ status based on factors outside of their control, including the state court's determinations on when to make rulings and issue juvenile court orders, and the vagaries of mailing and other delivery services that, in some circumstances, may impact the number of days that it would take for a petition to be received for filing.

*Id.* at 14, citing *Kirk v. Comm'r Soc. Sec. Admin*., 987 F.3d 314, 321 (4th Cir. 2021) (finding that an agency rule is arbitrary and capricious where it distinguishes between similarly situated claimants "based on circumstances entirely outside their control" (quoting *Hicks v. Comm'r of Soc. Sec*., 909 F.3d 786, 808 (6th Cir. 2018))); *Miller v. Bond*, 641 F.2d 997, 1005 (D.C. Cir. 1981) (holding that "[d]ecisions based on luck" are arbitrary and capricious).

The court in *Rodas Jara* found that USCIS's approach was particularly detrimental to petitioners, like Plaintiff, whose juvenile court order was issued the day before that individual's twenty-first birthday. The court in *Rodas Jara* noted that this scenario can occur "without a lack

of diligence by the petitioner because, unlike for many other requirements underlying an immigration benefit, the petitioner lacks the ability to determine when the requirement of having a qualifying juvenile court order will be satisfied" since "the state court, not the petitioner, controls when any hearing is held and when it ultimately issues a qualifying juvenile court order." *Id at 13*. In this scenario, the petitioner "has virtually no ability to satisfy the requirements" of the SIJS regulations as interpreted by USCIS and this is incongruous with Congress's intent. *Id.* at 12-13. Here, Plaintiff filed his dependency petition at the Massachusetts Essex probate and family court on July 2, 2021, but due to staffing shortages related to the COVID pandemic, a hearing was not scheduled until December 8, 2021. Furthermore, this occurred after Plaintiff was obligated to spend over 613 days, from July 2019 until March 2021, waiting in Mexico under the border restrictions then in place. See Dkt. 1, ¶¶ 31-32.

The court in *Rodas Jara* further held that "the effect of imposing…a time-of-filing requirement on SIJ petitions has been…to prevent noncitizens who were otherwise eligible for SIJ status from receiving the benefit that Congress intended for them to have," and that "the general time-of-filing requirement set forth in 8 C.F.R. § 103.2(b)(1), even if consistent with other parts of the INA relating to other immigration benefits, is incompatible with the SIJ statutory provisions because of unique aspects of the SIJ program, including that petitioners lack control over the timing of the issuance of a required juvenile court order and, in light of the filing procedures, over the specific date and time when an application will be deemed to have been filed." *Id.* at 16.

Although Defendants maintain that Plaintiff's SIJS petition was properly denied because he could not establish that he was under twenty-one at the time of filing, the plain language and purpose of the SIJS statute defeat Defendants' contentions. There is no justification in the statute

or implementing regulations for the system of barriers USCIS has erected for SIJS applicants, especially those who find themselves nearing the deadline for SIJS eligibility. Despite the intent of Congress, and the inherent vulnerabilities of SIJS applicants, USCIS's insistence that the petition is only considered to have been "filed" on the date it is received by USCIS and that as such, the age out provisions trigger only upon "filing" and not when the person applies for SIJS is arbitrary and capricious.

Even if these practices could be found to be justified, Defendants have never offered any explanation or justification for Plaintiff's SIJS petition specifically not having been accepted by USCIS on the date that FedEx initially sought to deliver it, December 8, 2021. USCIS has contended that the petition was not delivered due to having arrived outside of "regular business hours" but nowhere are any such business hours for the Chicago Lockbox defined or posted on USCIS's "Lockbox Filing Information" page, found at https://www.uscis.gov/forms/filing-guidance/lockbox-filing-information. The USCIS Policy Manual is also silent as to this information while stating that "[t]he determination of whether a benefit request was timely submitted is not a criterion for acceptance; rather, it is part of the eligibility determination for the benefit request that an officer makes at the time of adjudication. Therefore, USCIS does not reject filings at intake due to missed deadlines." USCIS Policy Manual, Vol. 1, Part B, Ch. 6 ("Submission of Benefit Requests")

Here, Plaintiff met the statutory requirements of 8 U.S.C. § 1101(a)(27) because he was under twenty-one years of age at the time of filing his petition, was unmarried, was physically present in the United States, and was the subject of a juvenile court order that meets the SIJS requirements. He mailed his petition as required to the Chicago Lockbox and the petition arrived at the lockbox on the day preceding his twenty-first birthday, at which time USCIS arbitrarily

refused to accept the petition. Thus, Plaintiff asserts that he should have been granted SIJ status and any USCIS decision to the contrary is in contravention of the SIJS statute.

### C. Equitable Tolling Should be Permitted.

Equitable tolling is read into every federal statute except where Congress has explicitly excluded the statute from tolling. *Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996). Equitable tolling should be permitted "where the defendant's misconduct prevented the plaintiffs from timely filing their claim, or where extraordinary circumstances beyond plaintiffs' control prevented timely filing." *Id.* Where a statute is silent as to equitable tolling, courts' determinations must be guided by a test requiring consideration of whether the plaintiff exercised reasonable diligence in pursuing their claim and whether extraordinary circumstances prevented the plaintiff from timely filing. *United States v. Wong*, 575 U.S. 402 (2015), *quoting* *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990) ("[a] rebuttable presumption of equitable tolling should also apply to suits brought against the United States under a statute waiving sovereign immunity") In applying this rebuttable presumption, the court in *Wong* found that "the Government must clear a high bar to establish that a statute of limitations is jurisdictional" and that "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Wong* at 410. Further, the Supreme Court "[has] made plain that most time bars are nonjurisdictional" and that "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.* Here, there is no clear indication that Congress intended the SIJS statute, which waives sovereign immunity, to operate in such a way.

## II. Plaintiff has not Waived any Issues

Defendants assert that Plaintiff's claims in Counts Two, Three, and Four of the complaint are waived due to his purported failure to exhaust his administrative remedies. However, several the cases cited by Defendants in support of this contention implicate statutes other than the APA, at least some of which have their own statutory exhaustion requirements. The Supreme Court has held that issue exhaustion need not be generally presumed in the absence of statutory language indicating that issues must first be raised before the agency before being raised in a judicial proceeding. *Sims v. Apfel*, 530 U.S. 103 (2000). The Supreme Court in *Sims* also emphasized that when issue exhaustion was imposed in cases where there is no statutory basis, this was done in adversarial proceedings. As such, because Social Security hearings are not adversarial, issue exhaustion was not required as "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109.

In contrast to an adversarial proceeding in which "the rationale for requiring issue exhaustion is at its greatest," proceedings involving affirmative applications before USCIS are not adversarial and thus, "the reasons for a court to require issue exhaustion are much weaker." *Id.* at 110, citing *Hormel v. Helvering*, 312 U. S. 552 (1941), *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U. S. 33 (1952). While the Supreme Court relied in part on *L.A. Tucker Truck Lines* in reaching their holding in *Sims*, Defendants in their brief cite to *L.A. Tucker Truck Lines* but fail to mention the importance of considering the adversarial nature of proceedings, or lack thereof, before imposing such an administrative exhaustion requirement.

In summary, Plaintiff has pled to sufficient facts to assert that in denying Plaintiff's SIJS petition, Defendants went beyond their statutory jurisdiction and authority by adding or modifying requirements to the SIJS provisions of the INA and as such, acted contrary to law. In

doing so, Defendants' actions violate the APA's requirement that USCIS not act in an "arbitrary [or] capricious" manner, 5 U.S.C. § 706(2)(A), or in "excess of statutory jurisdiction," *id.* § 706(2)(C).

For the above-stated reasons, this Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

By: /s/ Jacklyn Gurany
Jacklyn Gurany (BBO# 679606)
Children's Law Center of MA
2 State Street P.O. Box 710
Lynn, MA 01903
781-309-5486
J.Gurany@clcm.org

/s/ Julianna Rivera Maul
Julianna Rivera Maul (CA SBN 290955)
The Law Office of Julianna Rivera, P.C.
1101 Fifth Ave, Suite 360
San Rafael, CA 94901
510-473-2141
Julianna@juliannariveralaw.com

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I, Jacklyn Gurany, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: September 3, 2026

By: /s/ Jacklyn Gurany
Jacklyn Gurany (SBN 679606)
Children's Law Center of MA
2 State Street P.O. Box 710
Lynn, MA 01903
781-309-5486
J.Gurany@clcm.org